United States District Court
Southern District of Texas
**ENTERED**
October 01, 2026
Nathan Ochsner, Clerk

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

| | | |
|---|---|---|
| **EDWARD WILKINSON, Independent Co-Executor of the Estate of LaVera Noles Sanders, and GREG MIDDLETON, Independent Co-Executor of the Estate of LaVera Noles Sanders,** | § § § § § | |
| | § | |
| **Plaintiffs,** | § | |
| | § | |
| **v.** | § | **Civil Action No. 4:23-CV-00247** |
| | § | |
| **UNITED STATES OF AMERICA,** | § | |
| | § | |
| **Defendant.** | § | |

**MEMORANDUM OPINION AND ORDER**

This case asks a deceptively simple question: What did LaVera Noles Sanders own when she died? LaVera Noles Sanders ("Sanders") became the sole owner of OTECO, an oilfield-equipment manufacturing business founded by her husband, after his death. In 1990, Sanders sold OTECO's business operations, renamed the corporation LaVera, Inc., and invested the sale proceeds in marketable securities. In 2017, Sanders undertook an estate plan that contemplated converting LaVera, Inc. into a limited partnership. She signed the documents intended to effect the conversion, but no one filed them with the Texas Secretary of State before she died. After Sanders's death, her attorney filed the documents, and the Estate reported a limited-partnership interest on its federal estate-tax return. The Government disagreed. Sanders's co-executors, Edward Wilkinson and Greg Middleton (collectively, "Plaintiffs"), now seek a refund of federal estate taxes, contending that Sanders owned a limited-partnership interest in LaVera Group, LP—not

LaVera, Inc.—when she died. The Court must therefore decide whether the failure to file the required documents before Sanders's death prevented the conversion from taking effect.

Pending before the Court are Plaintiffs' Motion for Partial Summary Judgment, (Dkt. No. 35), and the United States's Motion for Partial Summary Judgment, (Dkt. No. 36). Both motions concern whether Sanders owned an interest in a limited partnership or a corporation on the date of her death. (Dkt. No. 35 at 1); (Dkt. No. 36 at 8). For the following reasons, the Court **DENIES** Plaintiffs' Motion for Partial Summary Judgment, (Dkt. No. 35), and **GRANTS** the United States's Motion for Partial Summary Judgment, (Dkt. No. 36).

## I. BACKGROUND

### A. FACTS[1]

#### 1. The Proposed Restructuring

Otis W. Sanders founded OTECO, an oilfield-equipment manufacturing business, in 1948. (Dkt. No. 36 at 9). After his death in 1975, his wife, LaVera Noles Sanders, became OTECO's sole owner and shareholder. (*Id.*). In 1990, Sanders sold OTECO's business operations and changed the corporation's name to LaVera, Inc. (*Id.*). LaVera, Inc. then invested the sale proceeds in marketable securities. (*Id.*).

---

[1] Except where noted, this Section contains only undisputed facts, and all facts and reasonable inferences have been construed in favor of the nonmovant. *Renfroe v. Parker*, 974 F.3d 594, 599 (5th Cir. 2020); *Amerisure Ins. v. Navigators Ins.*, 611 F.3d 299, 304 (5th Cir. 2010). The Court has not weighed evidence or made credibility findings.

Plaintiffs Edward Wilkinson and Greg **Middleton** are the co-executors of Sanders's estate. (Dkt. No. 36 at 11–12). Wilkinson is a certified public accountant who worked for OTECO and later served as Sanders's business advisor. (*Id.*). Middleton is Sanders's son and worked for OTECO and LaVera, Inc. (*Id.* at 12).

In 2017, Sanders sought estate-planning advice from attorney Michael C. Riddle. (*Id.*) Riddle recommended an estate plan involving a limited partnership. (*Id.*). The proposed plan contemplated converting LaVera, Inc. into LaVera Group, LP, with LaVera Management, LLC serving as the general partner (the "Estate Plan"). (*Id.* at 12–13).

According to Plaintiffs, Sanders executed documents intended to implement the restructuring on November 8, 2017.[2] (Dkt. No. 35 at 5). Those documents included a Certificate of Conversion converting LaVera, Inc. to LaVera Group, LP, (Dkt. No. 36-7), the Limited Partnership Agreement for LaVera Group, LP, (Dkt. No. 36-9), the Certificate of Formation for LaVera Group, LP, (Dkt. No. 36-8), the Certificate of Formation for LaVera Management, LLC, (Dkt. No. 36-37), and the Company Agreement for LaVera Management, LLC, (Dkt. No. 36-14) (collectively, the "Documents").

### 2. <u>Events Following the Execution of Documents</u>

The Documents were not filed with the Texas Secretary of State before Sanders's death. (Dkt. No. 35 at 6). Sanders died on May 29, 2018. (*Id.*).

---

[2] The Parties dispute whether Sanders executed the documents intended to implement the proposed restructuring on November 8, 2017. The United States alleges that the notary who notarized Sanders's signatures did not record the transaction in her notary log. (Dkt. No. 39 at 2). For purposes of its Motion, however, the United States assumes that Sanders executed the documents on the date the Plaintiffs allege. (Dkt. No. 42 at 10). The Court does the same.

After Sanders's death, Riddle filed the Certificate of Conversion and Certificate of Formation for LaVera Group, LP, on August 17, 2018. (Dkt. No. 36 at 15). He filed the Certificate of Formation for LaVera Management, LLC, on September 17, 2018. (*Id.* at 17). Riddle testified that his firm's failure to file the Certificates of Conversion and Formation before Sanders's death was a "clerical oversight." (*Id.* at 17–18).

Riddle prepared the Estate's federal estate-tax return, which Wilkinson signed. (*Id.* at 22). On Schedule G, the Estate reported a value of $8,291,000 for a 94% limited-partnership interest in LaVera Group, LP, and $87,320.11 for a 99% interest in LaVera Management, LLC. (*Id.* at 23).

### B. Procedural History

The Internal Revenue Service ("IRS") selected the Estate's federal estate-tax return for examination in March 2019. (Dkt. No. 36 at 23). Following its examination, the IRS issued a Statutory Notice of Deficiency, proposing six adjustments and an increase in the estate-tax liability. (Dkt. No. 26-1). The parties later stipulated that five of those adjustments were no longer at issue. (Dkt. No. 26 at 2).

On December 20, 2021, the Estate paid the additional tax assessment following the IRS examination and filed an amended Form 706 seeking a refund. (Dkt. No. 36 at 24). The amended return asserted that the limited-partnership structure, LaVera Group, LP, rather than LaVera, Inc., was the appropriate property interest to include in Sanders's gross estate. (*Id.*).

The IRS did not grant the requested refund, (Dkt. No. 36 at 24), and Plaintiffs filed this action seeking a refund of federal estate taxes. (Dkt. No. 1). On February 19, 2025,

the parties filed cross-motions for partial summary judgment concerning whether the conversion of LaVera, Inc. into LaVera Group, LP became effective before Sanders's death and, consequently, which property interest should be included in her gross estate. (Dkt. Nos. 35, 36). The Parties filed responses on March 12, 2025, (Dkt. Nos. 38, 39), and replies on March 18, 2025, (Dkt. Nos. 41, 42).

## II. LEGAL STANDARD

Summary judgment is appropriate when there is "no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A fact is material if it could affect the suit's outcome under governing law. *Renwick v. PNK Lake Charles, LLC*, 901 F.3d 605, 611 (5th Cir. 2018) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986)). And "[a] dispute about a material fact is 'genuine' if the evidence is such that a reasonable jury could return a verdict for the non-moving party." *TIG Ins. Co. v. Sedgwick James*, 276 F.3d 754, 759 (5th Cir. 2002) (quoting *Anderson*, 477 U.S. at 248, 106 S.Ct. at 2510). The moving party "always bears the initial responsibility of informing the district court of the basis for its motion," and identifying the record evidence that "it believes demonstrate[s] the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986). "If the moving party fails to meet [its] initial burden, the motion [for summary judgment] must be denied, regardless of the nonmovant's response." *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc) (per curiam).

If the movant meets this burden, the nonmovant must come forward with specific facts showing a genuine issue for trial. Fed. R. Civ. P. 56(c); *see also Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586–87, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986). The nonmovant must "go beyond the pleadings and by [the nonmovant's] own affidavits, or by the depositions, answers to interrogatories, and admissions on file, designate specific facts showing that there is a genuine issue for trial." *Nola Spice Designs, LLC v. Haydel Enters.*, 783 F.3d 527, 536 (5th Cir. 2015) (quoting *EEOC v. LHC Grp., Inc.*, 773 F.3d 688, 694 (5th Cir. 2014)). "The nonmovant must 'identify specific evidence in the record and . . . articulate the precise manner in which that evidence supports his or her claim.'" *Carr v. Air Line Pilots Ass'n, Int'l*, 866 F.3d 597, 601 (5th Cir. 2017) (per curiam) (quoting *Ragas v. Tenn. Gas Pipeline Co.*, 136 F.3d 455, 458 (5th Cir. 1998)). If evidence is merely colorable, or not significantly probative, summary judgment is appropriate. *Parrish v. Premier Directional Drilling, L.P.*, 917 F.3d 369, 378 (5th Cir. 2019) (citing *Anderson*, 477 U.S. at 249–50, 106 S.Ct. at 2511).

In reviewing a motion for summary judgment, the district court views the evidence in the light most favorable to the nonmovant. *Carr*, 866 F.3d at 601. This means that courts must resolve factual controversies in the nonmovant's favor, "but only when . . . both parties have submitted evidence of contradictory facts." *Little*, 37 F.3d at 1075. And when parties cross-move for summary judgment, as in this case, courts review each party's motion independently, viewing the evidence and inferences in the light most favorable to the nonmoving party. *Amerisure Ins. Co. v. Navigators Ins. Co.*, 611 F.3d 299, 304 (5th Cir. 2010).

## III. DISCUSSION

The issue before the Court is **whether Sanders owned stock in LaVera, Inc. or a limited-partnership interest in LaVera Group, LP** on the date of her death. The resolution of that issue determines which property interest should have been included in her **gross estate for federal estate-tax purposes**. (*See* Dkt. No. 36 at 8).[3] Federal courts look to state law to "determine the exact nature of the property or interest in property." *Adams v. United States,* 218 F.3d 383, 386 (5th Cir. 2000). Texas law therefore governs the nature of Sanders's property interest.

Plaintiffs acknowledge that the Documents were not filed with the Texas Secretary of State until after Sanders's death but contend that Sanders nevertheless "substantial[ly] compli[ed] in good faith" with the Texas Business Organizations Code ("TBOC"). (Dkt. No. 35 at 7–9). The United States responds that substantial compliance is not the applicable standard under Texas law. (Dkt. No. 36 at 31). The question, therefore, is whether execution of the Documents, without filing them with the Texas Secretary of State, was sufficient to make the conversion effective before Sanders's death.

The Texas Supreme Court has not addressed that precise question under the TBOC. Answering that question therefore requires an "*Erie* guess." *See, e.g., Am. Int'l Specialty Lines Ins. Co. v. Rentech Steel, LLC,* 620 F.3d 558, 564 (5th Cir. 2010). In making

---

[3] Although the ultimate question in this case concerns the *value* of the property included in Sanders's estate, the Parties' Partial Motions for Summary Judgment ask the Court to determine only the nature of the property interest, not its value.

an *Erie* guess, the Court determines how the Texas Supreme Court would resolve the issue under the circumstances presented here. *Amerisure Ins. Co.*, 611 F.3d at 307.

### A. STATUTORY INTERPRETATION

"When 'interpreting a Texas statute, we use the same methods of statutory interpretation' used by the Supreme Court of Texas." *CANarchy Craft Brewery Collective, L.L.C. v. Tex. Alc. Bev. Comm'n*, 37 F.4th 1069, 1074 (5th Cir. 2022) (quoting *Camacho v. Ford Motor Co.*, 993 F.3d 308, 311 (5th Cir. 2021)). The Texas Supreme Court's "fundamental goal when reading statutes 'is to ascertain and give effect to the Legislature's intent.'" *CANarchy*, 37 F.4th at 1074 (quoting *Cadena Comercial USA Corp. v. Tex. Alc. Bev. Comm'n*, 518 S.W.3d 318, 325 (Tex. 2017)). Courts seek that intent "first and foremost in the plain meaning of the text." *Greater Hous. P'ship v. Paxton*, 468 S.W.3d 51, 58 (Tex. 2015). And "[w]here text is clear, text is determinative." *Entergy Gulf States, Inc. v. Summers*, 282 S.W.3d 433, 437 (Tex. 2009).

#### 1. <u>Statutory Text</u>

Here, the Estate Plan required converting LaVera, Inc., a corporation, into a newly formed limited partnership, LaVera Group, LP. (Dkt. No. 36 at 12–13). Section 3.006 of the TBOC, which addresses the formation of a new filing entity through conversion, provides:

> (a) If a new domestic filing entity is formed under a plan of conversion or merger, the certificate of formation of the entity must be filed with the certificate of conversion or merger under Section 10.155(a) or 10.153(a). The certificate of formation is not required to be filed separately under Section 3.001.

> (b) The formation and existence of a domestic filing entity that is a converted entity in a conversion or that is to be created under a plan of merger takes effect and commences on the effectiveness of the conversion or merger, as appropriate.

Tex. Bus. Org. Code. § 3.006.[4]

Section 3.006 thus requires the Certificate of Formation for the newly formed filing entity to be filed with the Certificate of Conversion. *See id.* And the formation and existence of LaVera Group, LP, would commence when the conversion became effective. *See id.*

Section 10.154 directly addresses what is required for a conversion to become effective. It provides that, "[a]fter approval of a plan of conversion as provided by this code, a certificate of conversion must be filed for the conversion to become effective if" either "any domestic entity that is a party to the conversion is a filing entity" or "any domestic entity to be created under the plan of conversion is a filing entity." Tex. Bus. Org. Code § 10.154(a). Because LaVera, Inc. was a corporation and LaVera Group, LP would be a limited partnership—both filing entities under the TBOC—Section 10.154 required a Certificate of Conversion to be filed for the conversion to become effective. *See id.* §§ 1.002(22), 10.154(a).

---

[4] A "filing entity" is defined as "a domestic entity that is a corporation, limited partnership, limited liability company, professional association, cooperative, or real estate investment trust." Tex. Bus. Org. Code § 1.002(22).

Section 10.105 identifies when such a conversion takes effect. It provides that although a conversion ordinarily "takes effect at the time provided by the plan of conversion," a conversion requiring a filing under Subchapter D "takes effect on the acceptance of the filing of the certificate of conversion by the filing officer." *Id.* § 10.105. Thus, where Section 10.154 requires filing—as it does here—the conversion does not become effective merely upon execution of the conversion documents. It becomes effective upon acceptance of the filing of the Certificate of Conversion.

The conversion and formation documents also must be filed in accordance with Section 10.155(a), which provides, in pertinent part:

> (a) If a certificate of conversion is required to be filed, the certificate of conversion must be filed in accordance with Chapter 4. If the converted entity is a filing entity, the certificate of formation of the filing entity must also be filed with the certificate of conversion in accordance with Chapter 4. Except as provided by this section, *the certificate must be filed with the secretary of state*.

*Id.* § 10.155(a) (emphasis added).

Formation and conversion documents therefore must be filed in accordance with Chapter 4. Under Chapter 4, a filing instrument must be "delivered to the secretary of state." *Id.* § 4.001(a)(2). And, as a general rule, "[a] filing instrument submitted to the secretary of state takes effect on filing." *Id.* § 4.051. Read together, these provisions expressly require the relevant conversion and formation instruments to be filed and provide that a conversion requiring such a filing takes effect upon acceptance of the Certificate of Conversion by the filing officer. *See id.* §§ 3.006, 4.001(a)(2), 4.051, 10.105, 10.154(a), 10.155(a).

The statutory history reinforces that reading. The former Texas Revised Limited Partnership Act ("TRLPA")[5] expressly permitted substantial compliance with certain requirements governing the formation and operation of limited partnerships. For example, the TRLPA provided that a limited partnership was formed upon filing its initial certificate if there had been "substantial compliance" with the applicable statutory requirements. Tex. Civ. Stat. Art. 6132a-1, § 2.01(b) (expired). But the provisions governing conversion did not contain a comparable substantial-compliance standard. *See generally id*. § 2.15. The Legislature thus knew how to provide expressly for substantial compliance when it wished to do so.[6]

Texas courts construing former partnership statutes have drawn the same distinction. In *Apcar Investment Partners VI, Ltd. v. Gaus*, the court declined to imply substantial compliance with registration requirements where the governing provision contained no such language. 161 S.W.3d 137, 141–42 (Tex. App.—Eastland 2005, no pet.). Likewise, in *Edward B. Elmer, M.D., P.A. v. Santa Fe Properties, Inc.,* the court contrasted a limited-partnership statute that expressly authorized substantial compliance with a registered-limited-liability-partnership provision that did not. No. 04-05-00821-CV, 2006 WL 3612359, at *2 (Tex. App.—San Antonio Dec. 13, 2006, no pet.) ("A plain reading of

[5] The Texas Revised Limited Partnership Act was replaced by the Texas Business Organizations Code ("TBOC") on January 1, 2010. *See Milner v. Milner,* 361 S.W.3d 615, 622 n.6 (Tex. 2012).

[6] Commentary discussing the transition to the TBOC similarly notes that prior limited-partnership law expressly recognized substantial compliance in circumstances where the TBOC does not contain the same language. *Forming a Limited Partnership*, O'Connor's Texas Business Organizations Handbook Ch. 4-A § 1 (citing Tex. Rev. Civ. Stat. art. 6132a-1, § 2.01(b) (expired)).

the statute reveals that it contains no substantial compliance language."). The court concluded from the statutory text that strict compliance with the latter provision was required. *Id*.

That approach accords with the Texas Supreme Court's more recent decision in *BankDirect Capital Finance, LLC v. Plasma Fab, LLC*, 519 S.W.3d 76 (Tex. 2017). There, the court declined to "engraft" a substantial-compliance exception into an unambiguous statutory requirement when the Legislature had not provided one. *Id*. at 80–81. The Texas Supreme Court emphasized that the Legislature expressly incorporated substantial-compliance standards throughout Texas law when it intends to forgive less-than-exact compliance. *Id*. at 80–82. As the court explained, "[w]hen the Legislature desires a not-so-bright line forgiving noncompliance, it knows what to say and how to say it." *Id*. at 83.

The TBOC provisions governing the conversion at issue here contain no comparable substantial-compliance language. Instead, Sections 3.006, 10.154, and 10.155 expressly require filing, and Section 10.105 expressly provides that a conversion requiring such a filing takes effect upon acceptance of the Certificate of Conversion by the filing officer. The statutory text therefore points to filing—not execution of the Documents alone—as the event necessary to complete the conversion.

Other authorities are consistent with that conclusion. In *Pike v. Texas EMC Management, LLC*, Justice Bland observed that "[l]ike a corporation, a limited partnership is a creature of statute" and that formation requires both a partnership agreement and the filing of a certificate of formation with the Secretary of State. 610 S.W.3d 763, 797 &

n.19 (Tex. 2020) (Bland, J., dissenting). Similarly, the Thirteenth Court of Appeals has stated that another type of domestic filing entity, a professional association, "does not exist until the certificate of formation is filed with the Texas Secretary of State and takes effect." *Krishnan v. Majka*, No. 13-20-00409-CV, 2022 WL 1177644, at *1 n.1 (Tex. App.—Corpus Christi–Edinburg Apr. 21, 2022, no pet.) (citing Tex. Bus. Orgs. Code § 3.001(c)).

And in *In re Mulligan Mint*, the Northern District of Texas treated filing as a requirement of conversion under the TBOC, reasoning that if the business at issue were a partnership, then under Section 10.154 "it would have needed to file a Certificate of Conversion to have the Corporation replace it." 516 B.R. 407, 412 (N.D. Tex. 2014).

Taken together, the statutory text, its history, and the authorities interpreting analogous provisions support the same conclusion: filing is a statutory requirement for the conversion and formation at issue here. Indeed, Section 10.154 expressly requires a Certificate of Conversion to be filed for this conversion to become effective, and Section 10.105 expressly provides that the conversion takes effect upon acceptance of that filing. Nothing in the relevant TBOC provisions permits execution of the conversion documents alone, without the required filing, to make the conversion effective.

**2. <u>Application</u>**

Under Sections 3.006 and 10.154(a) of the TBOC, converting LaVera, Inc. into LaVera Group, LP required filing the Certificate of Formation for LaVera Group, LP together with the Certificate of Conversion. And under Section 10.105, the conversion would not become effective until the filing officer accepted the Certificate of Conversion for filing. It is undisputed that those Documents were not filed before Sanders's

death. (Dkt. No. 35 at 7). The statutory filing requirements therefore had not been satisfied, and the conversion had not become effective, when Sanders died.

Because the relevant TBOC provisions expressly require filing and contain no substantial-compliance exception, the Court cannot treat execution of the unfiled Documents as sufficient to make the conversion effective. Accordingly, LaVera Group, LP had not been formed through the proposed conversion, and LaVera, Inc. had not been converted into LaVera Group, LP before Sanders's death. Sanders therefore owned 100% of the stock in LaVera, Inc. when she died.

The Documents themselves reinforce that conclusion. The LaVera Group, LP, Partnership Agreement states that the "[p]artnership shall become effective upon the date the Certificate of Formation is filed as required by the TBOC." (Dkt. No. 36-9 at 2). The Certificate of Conversion likewise states that "[t]he conversion will become effective when filed." (Dkt. No. 36-7 at 2). Thus, even apart from the statutory requirements, the documents Sanders executed contemplated that the conversion and formation would not become effective until filing.

Because the Court concludes that Sanders owned stock in LaVera, Inc. rather than a limited-partnership interest in LaVera Group, LP at the time of her death, the Court need not address the United States's remaining alternative argument that Sections 2035 and 2036 of the Internal Revenue Code require disregarding the limited-partnership structure for estate-tax purposes.

## IV. CONCLUSION

Considering the foregoing analysis, the Court **DENIES** Plaintiffs' Motion for Partial Summary Judgment, (Dkt. No. 35), and **GRANTS** the United States's Motion for Partial Summary Judgment, (Dkt. No. 36).

It is SO ORDERED.

Signed on September 30, 2026.

Drew B Tipton

**DREW B. TIPTON**
**UNITED STATES DISTRICT JUDGE**